ROBYN C. CROWTHER, State Bar No. 193840
  rcrowther@bsfllp.com
TREVOR P. STUTZ, State Bar No. 296882
  tstutz@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

DAVID BOIES (*Pro Hac Vice* Pending)
  DBoies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone:  (914) 749-8200
Facsimile: (914) 749-8300

LUIS ROBERTO VERA, JR. (*Pro Hac Vice* Pending)
  lrvlaw@sbcglobal.net
LULAC NATIONAL GENERAL COUNSEL
Attorney and Counselor at Law
1325 Riverview Towers, 111 Soledad
San Antonio, Texas 78205-2260
Telephone: (210) 225-3300
Facsimile: (210) 225-2060

Counsel for Plaintiffs

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PAUL RODRIGUEZ; ROCKY CHAVEZ; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; and CALIFORNIA LEAGUE OF UNITED LATIN AMERICAN CITIZENS, <br><br> Plaintiffs, <br><br> v. <br><br> JERRY BROWN, in his official capacity as Governor of the State of California; and ALEX PADILLA, in his official capacity as Secretary of State of the State of California, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

BOIES SCHILLER FLEXNER LLP

## I.      NATURE OF THE ACTION

1.      The predominant method in America for counting votes in presidential elections violates the United States Constitution; it also distorts presidential campaigns, facilitates outside interference in our elections, and ensures that a substantial number of citizen voters are disenfranchised when their votes are tallied in early November, only to be discarded when it really counts in mid-December.

2.      The Constitution assigns to presidential "Electors" the vote to choose the President and Vice President.  U.S. Const. art. II, § 1.  States determine how those Electors are selected.  California, like 47 other states and the District of Columbia, has decided to select Electors on a winner-take-all ("WTA") basis, whereby the political party of the leading candidate among California's voters selects every Elector, with the vote of every other California citizen rendered meaningless by receiving no Elector directly or through a political party.  In 2016, for example, Secretary Hillary Clinton received 61.73% of the votes in California, yet she received every single electoral vote from California.  Likewise, President Donald Trump received 31.62% of the votes in California, but received none of the electoral votes from California.

3.      This magnification of certain votes and cancellation of all others is required by California law.  Under California's WTA method of selecting Electors, the party of the presidential candidate who wins more votes in the state than any other candidate is awarded all of California's fifty-five Electors.  *See* California Elections Code §§ 6901, 6902, 6906, 15400, 15452, 15505; *see also* National Archives and Records Administration, *Frequently Asked Questions*, https://www.archives.gov/federal-register/electoral-college/faq.html#wtapv (last visited Feb. 15, 2018) ("The District of Columbia and 48 states have a winner-takes-all rule for the Electoral College.  In these States, whichever candidate receives a majority of the popular vote, or a plurality of the popular vote (less than 50 percent but more than any other candidate), takes all of the state's Electoral votes.").

Case No.
COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF

BOIES  SCHILLER  FLEXNER  LLP

4.     The WTA method gives only one candidate's party all of the Electors, regardless of whether the winning candidate has garnered only a few thousand more votes than the next vote-getter in California, as Woodrow Wilson did in 1916, or as much as 67% of the vote in California, as Franklin D. Roosevelt did in 1936.  Either way, the vote of each and every citizen voter is cancelled when the final direct election for President takes place unless it is cast for the winning candidate.  This includes as many as 4,483,810 California citizens who voted for Donald Trump in 2016.

5.     In California, it is Republican voters who are effectively disenfranchised by the WTA system of selecting Electors.  In each of the last seven presidential elections the candidate who won California and received all of California's Electors has been a Democrat.  In those seven presidential elections, 31,871,758 votes were cast for the Republican candidate in California, but none of the 382 California Electors were awarded to the Republican candidate.

6.     This problem is not unique to California; it is also not unique to Republicans, as the same phenomenon occurs in reverse in heavily Republican states where votes for the Democratic candidate for President are systemically discarded before the final direct election for President.

7.     Thus, under the WTA system, many Californians have been and will continue to be denied their constitutional right to an equal vote in the presidential election.

8.     The WTA system also weakens the influence of California in presidential campaigns generally.  In particular, WTA leads presidential campaigns to focus on "battleground" states that in 2016 together represented only 35% of voters and did not include California.  George Pilsbury & Julian Johannesen, Nonprofit VOTE, *America Goes to the Polls 2016: A Report on Voter Turnout in the 2016 Election*, at 12 (Mar. 16, 2017), *available at* http://www.nonprofitvote.org/documents/2017/03/america-goes-to-the-polls-

2016.pdf/.  Accordingly, presidential campaigns largely do not focus on the citizens of California, despite the fact that California has the highest number of Electors in the United States.  In fact, just four battleground states—Florida, North Carolina, Ohio and Pennsylvania—saw 71% of campaign advertising spending and 57% of candidate appearances; the top fourteen battleground states[1] saw 99% of advertising spending and 95% of candidate appearances.  *Id.* at 7, 12.  WTA therefore causes candidates for President and Vice President to give disproportionate attention to an unrepresentative subset of the country, ultimately giving that unrepresentative subset outsized political influence.  Under such circumstances, the presidential election does not reflect or include the voices of the entire nation, including individuals in California.

9.      Finally, the WTA system distorts presidential campaigns and facilitates outside interference in our elections.  In close elections, WTA makes it much easier and much more likely for a very small number of voters in a few predictable battleground states to determine the final electoral result than would be the case with a system of proportional selection of Electors.  This increased vulnerability gives the Court added reason to ensure that the current system satisfies the requirements of the Constitution.

10.      This lawsuit is a challenge to the WTA method selected by California.  As established by longstanding Supreme Court precedent, that exercise of state discretion remains subject to Constitutional norms, including the First and Fourteenth Amendments.

11.      To be clear, this lawsuit is not a challenge to the Electoral College, which is mandated by the Constitution.  Instead, it is a challenge to the decision of California to award and select Electors on a WTA basis.  The Constitution does not

---

[1]  The fourteen battleground states in the 2016 presidential election were assumed to be Arizona, Colorado, Florida, Georgia, Iowa, Maine, Michigan, Nevada, New Hampshire, North Carolina, Ohio, Pennsylvania, Virginia, and Wisconsin.

BOIES  SCHILLER  FLEXNER  LLP

address how states should select Electors, and it certainly does not require WTA. To the contrary, as shown below, WTA is inimical to the long-established principle of "one person, one vote," and thereby violates the fundamental constitutional right to vote, as well as other constitutional rights.

12.    Plaintiffs seek (1) a declaratory judgment that the WTA provisions of California's election code, *see* California Elections Code §§ 6901, 6902, 6906, 15400, 15452, and 15505, violate the First and Fourteenth Amendments to the United States Constitution; and (2) an order permanently enjoining the use of the WTA method (or other non-representational methods, such as selection by Congressional District vote) of selecting Electors in presidential elections.

13.    WTA violates the Fourteenth Amendment because it counts votes for a losing presidential candidate in California only to discard them in determining Electors who cast votes directly for the presidency.  Put differently, the WTA system unconstitutionally magnifies the votes of a bare plurality of voters by translating those votes into an entire slate of presidential Electors, all of whom support the nominee of a single political party—while, at the same time, the votes cast for all other candidates are given no effect.  Accordingly, in the last five presidential elections, at least 30% of California voters cast a vote for the candidate that did not win the popular vote in California, and those voters thereby effectively had their votes cancelled.  Their votes were completely irrelevant to how the Electors representing California voted in the Electoral College.  WTA thus treats California citizens who vote for a losing candidate in an arbitrary and disparate manner in clear violation of the principle of "one person, one vote."

14.    In addition, WTA violates the First Amendment because of the burdens that it places on the right of association and on the right to have a voice in presidential elections through casting a vote.  There is no state interest that remotely outweighs these burdens.  Again, at least 30% of voters in the last five presidential elections—nationwide and in California—have voted for a losing candidate, and

none of their votes have counted in the final direct election. This trend will likely continue.

## II.     JURISDICTION AND VENUE

15.     Subject matter jurisdiction for Plaintiffs' claims under the First and Fourteenth Amendments to the United States Constitution exists under 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b).

## III.    PARTIES

17.     Because of California's WTA method of selecting Electors, each of the individual Plaintiffs listed below ("Individual Plaintiffs") has suffered, and will again suffer, an injury that comes from lacking any meaningful representation in the final vote count for the President (and Vice President) of the United States. In particular, because the Individual Plaintiffs have voted for, and will vote for, the Republican or third-party candidate for President in California, they have been, and will be again, deprived of the right to have their votes counted equally and meaningfully toward the election of the President.

18.     Plaintiff Paul Rodriguez is a resident of the State of California, where he is registered to vote as a Republican and has been active within the Republican Party. Mr. Rodriguez has repeatedly voted in Studio City, California, for a Republican for President. Mr. Rodriguez plans to remain a permanent resident of California and will continue to vote in future presidential elections for the Republican candidate.

19.     Plaintiff Assemblyman Rocky Chavez is a resident of the State of California, where he is a registered to vote as a Republican and serves as a Republican state assemblyman representing the 76th District of California. Mr. Chavez has consistently voted in California for the Republican candidate for President. Mr. Chavez plans to remain a permanent resident of California and will continue to vote in future presidential elections for the Republican candidate.

20.     Plaintiff League of United Latin American Citizens ("LULAC") is the oldest and largest national Latino civil rights organization.  LULAC is a nonprofit organization, incorporated under the laws of the State of Texas, with presence in most of the fifty states and Puerto Rico, including California.  LULAC has chapters throughout California and has individual members who reside and vote throughout California, including members who have voted and will vote for the Republican, or third party, presidential candidate in California elections for the President.  LULAC has long been active in representing Latinos and other minority interests in all regions of the State.  LULAC conducts voter registration activities throughout California, and exercises its rights under the Constitution to engage in full and effective political participation for Latinos and minority voters.

21.     Plaintiff California League of United Latin American Citizens ("California LULAC") is a nonprofit organization with members located in many cities and towns throughout the State of California.  California LULAC has individual members who reside and vote throughout California, including members who have voted and will vote for the Republican, or third party, presidential candidate in California elections for the President.  Since its founding, California LULAC has fought for full access to the political process, increased political power, and improved political opportunities for Hispanic Americans in California.

22.     Defendant Jerry Brown is the Governor of California and is sued in his official capacity for declaratory and prospective injunctive relief to prevent a violation of federal constitutional rights.  Governor Brown is the chief executive officer of the State of California and has the duty to communicate to the "Archivist of the United States a certificate of such ascertainment of the electors appointed, setting forth the names of such electors and the canvass or other ascertainment under the laws of such State of the number of votes given or cast for each person for whose appointment any and all votes have been given or cast".  3 U.S.C. § 6.   In these circumstances, Governor Brown has no immunity from suit.

COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF

23.     Defendant Alex Padilla is the Secretary of State of California and is sued in his official capacity for declaratory and prospective injunctive relief to prevent a violation of federal constitutional rights.  Mr. Padilla is the chief elections officer of the state of California and must "analyze the votes given for presidential electors, and certify to the Governor the names of the proper number of persons having the highest number of votes."  *See* California Elections Code § 15505.  He must also "issue and transmit to each presidential elector a certificate of election." *Id.*  In these circumstances, Mr. Padilla has no immunity from suit.

## IV.     WTA IS NOT MANDATED BY THE CONSTITUTION

24.     Under Article II, Section 1 of the U.S. Constitution, states are given authority to determine the manner of selecting Electors.  That provision of the Constitution states: "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors" to choose a President and Vice President.

25.     "When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter."  *Bush v. Gore*, 531 U.S. 98, 104 (2000).

26.     The Constitution grants "extensive power to the States to pass laws regulating the selection of electors.  But the Constitution is filled with provisions that grant Congress or the States specific power to legislate in certain areas; these granted powers are always subject to the limitation that they may not be exercised in a way that violates other specific provisions of the Constitution."  *Williams v. Rhodes*, 393 U.S. 23, 29 (1968).

27.     California has chosen the WTA system of selecting Electors for presidential races.  Neither Article II, Section 1 of the U.S. Constitution, nor any other constitutional provision, compels California to make that choice.

B O I E S   S C H I L L E R   F L E X N E R   L L P

## V.   CALIFORNIA'S METHOD OF SELECTING ELECTORS IS UNCONSTITUTIONAL

28.     California's WTA method of selecting Electors violates the Fourteenth Amendment's command that no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  It also violates the First Amendment by unduly burdening the rights of the citizens of California to associate and to effectively express their political preferences through voting. *See* U.S. Const. amend. I, § 1.

29.     Under Article II, Section 1 of the United States Constitution, each state is required to appoint the same number of Electors as it has Senators and Representatives.  U.S. Const. art. II, § 1.  These Electors are tasked with electing the President and Vice President of the United States. *Id.*

30.     While Article II, Section 1 grants the states "extensive power" to "pass laws regulating the selection of electors," it cannot be "thought that the power to select electors could be exercised in such a way as to violate express constitutional commands that specifically bar States from passing certain kinds of laws." *Rhodes*, 393 U.S. at 29.  The Supreme Court has made clear "that no State can pass a law regulating elections that violates the Fourteenth Amendment's command that No State shall deny to any person the equal protection of the laws." *Id.* (internal quotation marks and ellipses omitted).  "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined.  Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right." *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964).

31.     In California, as in the rest of the country, citizens do not vote directly for President.  Instead, they vote for Electors, who then cast their votes in a direct election for President.  California has chosen to adopt a WTA system for

1   determining Electors.  Under this system, all of California's fifty-five Electors are

2   members of the political party that nominated the candidate that wins the popular

3   vote in the state.  The consequence of this system is to give no effect to the votes of

4   citizens who voted for a losing candidate in California in the tabulation of the final

5   vote for President.  California's WTA system violates the "one person, one vote"

6   principle, long enshrined in Fourteenth Amendment Supreme Court jurisprudence,

7   because votes for a losing presidential candidate are counted in California only to be

8   discarded when another candidate wins more votes in California.  In other words, if

9   an individual does not vote for the winning candidate in California, that person's

10   vote translates into no representation in the state's multi-member Electoral College

11   delegation.

12      ***A.      The WTA Method of Determining Electors Violates the "One Person,***

13      ***One Vote" Principle and the Fourteenth Amendment***

14      32.    In 2016, 31.6% of voters in California voted for the Republican

15   candidate for President.  Despite this significant bloc of support, every single

16   Republican vote was systemically discarded under the WTA method of selecting

17   Electors.

18      33.    Such systemic discarding of votes occurs in election after election in

19   California.  In the last five presidential elections, the Republican candidate for

20   President received at least 30% of the vote—31.6% in 2016 (4,483,810 votes),

21   37.1% in 2012 (4,839,958 votes), 36.9% in 2008 (5,011,781 votes), 44.3% in 2004

22   (5,509,826 votes), and 41.6% in 2000 (4,567,429 votes).  In each of these elections,

23   the entirety of California's Electors went to Democratic candidates, cancelling the

24   votes of Republican voters.  Combined, California has discarded almost 25 million

25   presidential votes since the year 2000.  During the same period, Democratic

26   candidates received over 37 million popular votes, but those votes were unduly

27   magnified in each election and translated into the election of 274 total Electors, and

28

Case No.

COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF

274 total electoral votes cast for Democratic presidential nominees.  During the same period, California selected zero Republican Electors.

34.   The inequitable nature of the current system of determining Electors has been recognized by both major parties.  As Saul Anuzis, the former Chairman of the Michigan Republican Party, stated, "This is, to me, a nonpartisan issue.  It's a question of what is the right way to elect a president.  In every other office in the land, we elect the person who gets the most votes, from dog catcher to governor." Eliza Newlin Carney, *GOP Nonprofit Backs Electoral College*, Roll Call (Dec. 7, 2011, 12:57 PM), http://www.rollcall.com/news/GOP-Nonprofit-Backs-Electoral-College-210872-1.html.

35.   Democrats also share this view.  For example, Representative James Clyburn, when writing on the WTA system of selecting Electors, stated, "My position has always been that winner-take-all elections trample on the variety of voices in our diverse country.  Winner-take-all elections by their very nature mean that the highest vote getter wins, even if the margin of victory is only one vote." James Clyburn, *Representative James Clyburn: Mend It*, The American Prospect (Dec. 19, 2001), http://prospect.org/article/flunking-electoral-college.  Similarly, retired Senate Minority Leader Harry Reid called the Electoral College "very undemocratic."  Chris Sanchez, *'UNDEMOCRATIC': Harry Reid goes in on the Electoral College*, Business Insider (Dec. 13, 2016, 10:54 PM), http://www.businessinsider.com/electoral-college-undemocratic-harry-reid-trump-hillary-clinton-2016-12.

36.   The "one person, one vote" principle means that California may not "value one person's vote over that of another."  *Bush*, 531 U.S. at 104–05.  The Supreme Court laid the groundwork for the "one person, one vote" principle over fifty years ago in *Baker v. Carr*, 369 U.S. 186 (1962), in which it recognized a right to vote "free of arbitrary impairment by state action" whether "such impairment resulted from dilution by a false tally, or by a refusal to count votes from arbitrarily

1    selected precincts, or by a stuffing of the ballot box." *Id.* at 208 (internal citations

2    omitted).

3        37.    "One person, one vote" was first articulated the following year in *Gray*

4    *v. Sanders*, 372 U.S. 368 (1963), which involved a challenge to Georgia's system

5    for allocating votes in the primary for statewide office.  The Court invalidated

6    Georgia's system because the candidate winning the popular vote in the county

7    under that system would receive "the entire unit vote of that county," with "other

8    votes for a different candidate being worth nothing and *being counted only for the*

9    *purpose of being discarded*." *Gray*, 372 U.S. at 381 n.12 (emphasis added).  In so

10   holding, the Court stressed:  "The conception of political equality from the

11   Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth,

12   Seventeenth, and Nineteenth Amendments can mean only one thing—one person,

13   one vote." *Id.* at 381.

14       38.    "Over the ensuing decades, the Court has several times elaborated on

15   the scope of the one-person, one-vote rule." *Evenwel v. Abbott*, 136 S. Ct. 1120,

16   1124 (2016).  The Supreme Court applied "one person, one vote" to invalidate a

17   scheme for the apportionment of seats in the Alabama legislature, *see Reynolds v.*

18   *Sims*, 377 U.S. 533, 563 (1964) (applying "one person, one vote" to strike down

19   method for counting votes and highlighting that weighting "the votes of citizens

20   differently, by any method or means, merely because of where they happen to

21   reside, hardly seems justifiable"), and to a system placing Electors for a new party

22   on the ballot, *see Moore v. Ogilvie*, 394 U.S. 814, 819 (1969) (concluding "The idea

23   that one group can be granted greater voting strength than another is hostile to the

24   one man, one vote basis of our representative government").

25       39.    Only one case involving the constitutionality of a WTA system in the

26   context of presidential elections has reached the Supreme Court and, in that case, the

27   Court summarily affirmed the lower court's decision without an opinion. *Williams*

28   *v. Va. State Bd. of Elections*, 288 F. Supp. 622 (E.D. Va. 1968), *summarily aff'd*

B O I E S   S C H I L L E R   F L E X N E R   L L P

BOIES SCHILLER FLEXNER LLP

*without opinion,* 393 U.S. 320 (1969).  In *Williams*, the plaintiffs brought an Equal Protection Clause challenge to Virginia's WTA system for selecting Electors before a three-judge panel.  The panel acknowledged "discrimination against the minority voters" because "once the electoral slate is chosen, it speaks only for the element with the largest number of votes."  *Id.* at 627.  It nonetheless dismissed the complaint, ruling that "in a democratic society the majority must rule, unless the discrimination is *invidious.*"  *Id.* (emphasis added).  The panel found that "No such evil has been made manifest" and dismissed the complaint.  *Id.*

40.     To the extent that there was once an invidiousness requirement to a Fourteenth Amendment claim involving violation of the "one person, one vote" principle, the Court's decision in *Bush v. Gore*, 531 U.S. 98 (2000) removed it.  There, the Supreme Court invalidated Florida's process for recounting votes in the 2000 presidential election for violating the "one person, one vote" principle. Notably, there was no suggestion that any unequal treatment of votes under Florida's process was invidious.  *See id.* at 105; *see also id.* at 104 ("When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter."); *id.* at 107 (holding that "'the idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government'") (quoting *Moore*, 394 U.S. at 819 (alteration omitted)).

## B.     The WTA Method of Determining Electors Violates the Right to Associate Protected by the First and Fourteenth Amendments to the United States Constitution

41.     The right to associate is protected under the First and Fourteenth Amendments.  "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by

-12-

Case No.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958).

42. The Supreme Court has long held that "political belief and association constitute the core of those activities protected by the First Amendment." *Elrod v. Burns*, 427 U.S. 347, 356 (1976). The "right of individuals to associate for the advancement of political beliefs" and "the right of qualified voters, regardless of their political persuasion, to cast their votes effectively" are "overlapping" rights that "rank among our most precious freedoms." *Rhodes*, 393 U.S. at 30.

43. California's WTA selection of Electors deprives Plaintiffs of their First and Fourteenth Amendment associational rights based solely on Plaintiffs' political association and expression of political views at the ballot box.

44. California's WTA selection of Electors discards Plaintiffs' votes for President, limiting Plaintiffs' ability to express their political preference. When Plaintiffs express their political preference through a vote for the Republican or third-party candidate, California's WTA selection of Electors ensures that Plaintiffs' voices are not heard and Plaintiffs' votes do not count toward the selection of Electors. Plaintiffs each become an "unequal participant in the decisions of the body politic." *Whitford v. Gill*, 218 F. Supp. 3d 837, 883 (W.D. Wis. 2016).

45. In 1986, the Supreme Court held that a state law restricting access to primary voting to those who were registered members of the party was unconstitutional because it limited "the Party's associational opportunities at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 216 (1986). The associational rights of Plaintiffs and other Republicans and third-party voters in California are similarly restricted due to California's WTA selection of Electors. Plaintiffs' votes are discarded "at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." *Id.*

46.     The WTA system also limits Plaintiffs' associational rights because it dilutes the power of the Republican and third-party voters in California.  As a result, candidates from major political parties rarely hold campaign events in California once they are selected by their parties in the primary.  This results in a reduced opportunity for all Californians to interface with and petition the candidates for major political parties in person, and "to express their ideas, hopes, and concerns to their government and their elected representatives" as is also protected by the Petition Clause of the First Amendment. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011).

47.     The impact of California's WTA system is felt nationally as well as locally.  Indeed, "in the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest." *Anderson v. Celebrezze*, 460 U.S. 780, 794–95 (1983) (footnote call omitted).  "Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States*"* and burdens on associational rights may place "a significant state-imposed restriction on a nationwide electoral process." *Id.* at 795.

48.     California has "a less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries." *Id.*  And any regulation of such elections may not contravene constitutional rights.  *See id.* at 788 (citing *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

49.     "When deciding whether a state election law violates First and Fourteenth Amendment associational rights," courts must "weigh the 'character and magnitude' of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

1       50.    California's WTA selection of Electors poses a severe burden on

2  Plaintiffs' associational rights that is not outweighed by any legitimate state interest.

3      **C.**    ***The WTA System Makes United States Elections More Vulnerable to***

4          ***Outside Influences***

5       51.    As government reports have concluded, "Russian intelligence accessed

6  elements of multiple state or local electoral boards.  Since early 2014, Russian

7  intelligence has researched US electoral processes and related technology and

8  equipment."  U.S. Office of the Dir. of Nat'l Intelligence, Background to "Assessing

9  Russian Activities and Intentions in Recent US Elections": The Analytic Process

10  and Cyber Incident Attribution, at 3 (2017),

11  https://www.dni.gov/files/documents/ICA_2017_01.pdf.  "Russia's effort to

12  influence the 2016 US presidential election represented a significant escalation in

13  directness, level of activity, and scope of effort compared to previous operations

14  aimed at US elections." *Id.* at 5.  Efforts from the outside to influence the outcome

15  of United States elections strike at the core of our democracy.

16       52.    The current WTA system makes our election system more vulnerable

17  to outside attacks, as prevailing under that system usually depends on gaining a

18  majority in a handful of battleground states.  As one commentator explained:  "It is

19  true that our decentralized, precinct-by-precinct system would make a coordinated

20  national vote hack a massive undertaking.  But given that our elections usually come

21  down to a few predictable states, swaying even a national election is not as hard a

22  task as it once seemed.  Sowing chaos at the district or precinct level appears to be

23  within hackers' current capabilities."  Suzanne Mello-Stark, *It's now clear US*

24  *voting is hackable.  Here are 6 things we must do to prevent chaos*, Vox (June 16,

25  2017, 10:50 AM), https://www.vox.com/the-big-idea/2017/6/16/15816510/voting-

26  security-hacks-russia-georgia-election.

27       53.    Under a more equitable and constitutional method of selecting Electors,

28  the risk of an outside influence changing the outcome of a presidential election is

Case No.

COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF

greatly reduced.  The votes of citizens in each state become meaningful and the outcomes of elections do not boil down to the winner of a few easily predictable states.

## CAUSES OF ACTION

### Count I – Fourteenth Amendment to the United States Constitution

54.     Plaintiffs reallege and incorporate all prior paragraphs of this Complaint.

55.     California's WTA system for selecting Electors results in the votes of citizens who voted for a losing candidate in the state not being counted in the final direct election for President.  Accordingly, California's WTA method of determining Electors violates the "one person, one vote" principle and the Fourteenth Amendment to the United States Constitution.

56.     Unless enjoined by order of this Court, Defendants will continue to violate the Fourteenth Amendment to the United States Constitution by implementing the WTA method of selecting Electors.

### Count II – First and Fourteenth Amendments to the United States Constitution

57.     Plaintiffs reallege and incorporate all prior paragraphs of this Complaint.

58.     California's WTA system poses a severe burden on Plaintiffs' rights to associate and to effectively express their political preference through voting that is not outweighed by any legitimate state interest.  Accordingly, California's WTA method of determining Electors violates the First and Fourteenth Amendments to the United States Constitution.

59.     Unless enjoined by order of this Court, Defendants will continue to violate the First and Fourteenth Amendments to the United States Constitution by implementing the WTA method of selecting Electors.

BOIES SCHILLER FLEXNER LLP

**ATTORNEYS' FEES**

60.  In accordance with 52 U.S.C. § 20510 and 42 U.S.C. § 1988, Plaintiffs are entitled to recover reasonable attorney's fees, expenses, and costs.

**PRAYER FOR RELIEF**

1.  WHEREFORE, Plaintiffs respectfully request that this Court:

   a.  declare that California's current method of selecting Electors under California Elections Code Sections 6901, 6902, 6906, 15400, 15452, and 15505, and any other related section, is unlawful because it (1) treats California citizens who vote for a losing candidate in an arbitrary and disparate manner in violation of the Fourteenth Amendment of the United States Constitution; and (2) burdens these citizens' rights to associate and to express their political preference effectively through voting in violation of the First and Fourteenth Amendments to the United States Constitution;

   b.  declare that Plaintiffs' rights will be irreparably harmed without injunctive or declaratory relief from this Court;

   c.  enjoin Defendants from selecting Electors under the challenged WTA system, or any other system that fails to treat each California citizen's vote for the President in an equal manner, including selection by Congressional District vote;

   d.  set reasonable deadlines for state authorities to propose and then implement a method of selecting Electors that treats each California citizen's vote for the President in an equal manner, making clear that such a system *cannot* include selection by Congressional District vote;

   e.  if state authorities fail to propose or implement a valid method of selecting Electors by the Court's deadlines, order a proportional

BOIES  SCHILLER  FLEXNER  LLP

1    method of distributing Electors, selecting a proportional number

2    of Electors to each party, based on the number of votes each

3    party's candidate receives statewide;

4    f.    adjudge all costs against Defendants, including reasonable

5    attorneys' fees and costs;

6    g.    retain jurisdiction to render any and all further orders that this

7    Court may deem necessary in order to ensure compliance; and

8    h.    grant any and all further relief to which Plaintiffs may show

9    themselves to be entitled.

10   DATED:  February 21, 2018      BOIES SCHILLER FLEXNER LLP

13   By   _____/s/ Robyn C. Crowther_____

14   ROBYN C. CROWTHER

16   ROBYN C. CROWTHER State Bar No. 193840
     *rcrowther@bsfllp.com*
17   TREVOR P. STUTZ, State Bar No. 296882
     *tstutz@bsfllp.com*
18   **BOIES SCHILLER FLEXNER LLP**
     725 South Figueroa Street, 31st Floor
19   Los Angeles, California 90017-5524
     Telephone: (213) 629-9040
20   Facsimile: (213) 629-9022

21   DAVID BOIES (*Pro Hac Vice* Pending)
     *DBoies@bsfllp.com*
22   **BOIES SCHILLER FLEXNER LLP**
23   333 Main Street
     Armonk, NY 10504
24   Telephone:  (914) 749-8200
     Facsimile: (914) 749-8300

26   JAMES P. DENVIR, III (*Pro Hac Vice* Pending)
     *JDenvir@BSFLLP.com*
27   AMY J. MAUSER (*Pro Hac Vice* Pending)
     *AMauser@BSFLLP.com*
28   KAREN L. DUNN (*Pro Hac Vice* Pending)
     *KDunn@BSFLLP.com*

-18-

LISA BARCLAY (*Pro Hac Vice* Pending)
  *LBarclay@BSFLLP.com*
AMY L. NEUHARDT (*Pro Hac Vice* Pending)
  *ANeuhardt@bsfllp.com*
HAMISH P.M. HUME (*Pro Hac Vice* Pending)
  *HHume@BSFLLP.com*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Avenue, N.W.
Washington, D.C.  20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

LUIS ROBERTO VERA, JR. (*Pro Hac Vice*
Pending)
  *lrvlaw@sbcglobal.net*
LULAC NATIONAL GENERAL COUNSEL
Attorney and Counselor at Law
1325 Riverview Towers, 111 Soledad
San Antonio, Texas 78205-2260
Telephone: (210) 225-3300
Facsimile: (210) 225-2060

MICHAEL D. HAUSFELD (*Pro Hac Vice*
Pending)
  *mhausfeld@hausfeld.com*
SWATHI BOJEDLA (*Pro Hac Vice* Pending)
  *sbojedla@hausfeld.com*
**HAUSFELD LLP**
1700 K Street, NW
Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

SCOTT A. MARTIN State Bar No. 173329
  *smartin@hausfeld.com*
IRVING SCHER (*Pro Hac Vice* Pending)
  *ischer@hausfeld.com*
JEANETTE BAYOUMI (*Pro Hac Vice* Pending)
  *jbayoumi@hausfeld.com*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322

MATT HERRINGTON (*Pro Hac Vice* Pending)
  *mherrington@steptoe.com*
ROGER E. WARIN (*Pro Hac Vice* Pending)
  *rwarin@steptoe.com*

-19-

JOE R. CALDWELL, JR. (*Pro Hac Vice* Pending)
  *jcaldwell@steptoe.com*
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429 3000
Facsimile: (202) 429 3902


JENNIFER D. HACKETT (*Pro Hac Vice* Pending)
  *JHackett@zelle.com*
JAMES R. MARTIN (*Pro Hac Vice* Pending)
  *JMartin@zelle.com*
ALLISON M. VISSICHELLI (*Pro Hac Vice*
Pending)
  *AVissichelli@zelle.com*
**ZELLE LLP**
1775 Pennsylvania Ave. NW, Ste. 375
Washington, D.C.  20008
Telephone: (202) 899-4100
Facsimile: (202) 899-4102


RANDALL L. ALLEN State Bar No. 264067
  *randall.allen@alston.com*
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone:  (404) 881-7196
Facsimile:  (404) 253-8473


SAMUEL ISSACHAROFF (*Pro Hac Vice* Pending)
  *si13@nyu.edu*
40 Washington Square South
New York, NY 10012
Telephone: (212) 998-6580


MARIA AMELIA CALAF (*Pro Hac Vice* Pending)
  *mac@wittliffcutter.com*
JACK A. SIMMS JR. (*Pro Hac Vice* Pending)
  *jack@wittliffcutter.com*
RYAN A. BOTKIN (*Pro Hac Vice* Pending)
  *ryan@wittliffcutter.com*
KATHERINE P. CHIARELLO (*Pro Hac Vice*
Pending)
  *katherine@wittliffcutter.com*
KAREN S. VLADECK (*Pro Hac Vice* Pending)
  *karen@wittliffcutter.com*
**WITTLIFF | CUTTER | AUSTIN, PLLC**
1803 West Ave.
Austin, Texas  78701
Telephone:  (512) 960-4730
Facsimile:  (512) 960-4869

BOIES SCHILLER FLEXNER LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARK GUERRERO (*Pro Hac Vice* Pending)
  mark@gwjustice.com
MARY WHITTLE (*Pro Hac Vice* Pending)
  mary@gwjustice.com
**GUERRERO & WHITTLE PLLC**
114 West 7th Street, Suite 1100
Austin, TX 78701
Telephone: (512) 605-2300
Facsimile: (512) 222-5280

*Counsel for Plaintiffs*

B O I E S   S C H I L L E R   F L E X N E R   L L P

Case No.
COMPLAINT FOR DECLATORY AND INJUNCTIVE RELIEF